We will hear argument next in number 22-2042, K-fee System v. Nespresso. Mr. Karsten. Thank you, Your Honor. Good morning, and may it please the court. The district court below committed three fundamental errors, each of which is independently reversible and subject to a de novo review standard. First, the court applied what can only be considered a vague disclaimer from the plain and ordinary meaning of the term barcode, where the claims, spec, and the interaction between the applicant and the patent office do not limit that term whatsoever. Second, the court then applied this disclaimer during the summary judgment process to find facts on what the particular excluded Yarish reference disclosed based solely on inventor self-serving testimony, extrinsic evidence. And third, the court improperly granted summary judgment of non-infringement on an incorrect legal standard that essentially collapsed the two prongs infringement test into one, and making adverse factual findings inconsistent with the plaintiff's allegations and with our expert's testimony, Dr. Singer. I'd like to focus on the claim construction, but obviously I want to address any questions that the panel might have here. With respect to the claim construction, but this, yes, your honor. On the JA1111. Yes, your honor. Have you got the, did you bring that appendix? I absolutely have it, and I've got the text right on my cheat sheet, your honor. This is where Dr. Wolfe was trying to explain to the APL the difference between bit codes, which are binary, and barcodes, which can be binary, and what the difference was. It's the statement on JA1111 that I think led to some of the problems that you're worried about going up. Can you explain to me what Dr. Wolfe was trying to tell the board where he says that document D1 jar-ish discloses a bit code, not a barcode. Because the barcode has shown that an always as constructive bar is having variable widths. And that's a matter of visual impression, isn't it? Yes, it is, your honor. Exactly right. A variable width, and therefore, contains more than only two binary symbols, such as ones and ones. What did he mean by that? Well, your honor, there are about 20 odd instances where Dr. Wolfe talks about barcode and what it means. This one instance reinforces what he said all along, and that is a barcode always has bars and gaps of variable width. A consequence of having the addition of width as a variable is that it gives the capacity for that barcode to convey additional information beyond, say, the symbol of a zero or the symbol of a one, or a yes or a no, or a true or a false. In fact, I would go so. What additional information would it convey, like what would an OO mean? Well, an OO, as discussed by Dr. Sinhos in connection with the summary judgment motion, can be the component of a modular barcode, where you have a grouping of symbols, a grouping of light or dark modules to create a larger bar. Yeah, I don't think you want to say symbols there. I think you want a grouping of modules to create a symbol. Exactly. Yes, although I think that the terminology that was used in the underlying references that was submitted to the EPO call that grouping of modules together a bar. But I'm happy to use the word symbol as well, Your Honor, either way. And I think part of the problem here, I don't mean to divorce myself from your question, but part of the problem here is that we have identified an alleged infringement on this virtuo capsule, the accused products here, using bar the way that modular barcodes and that common consistent pattern has been used. Whereas Nespresso says, no, no, no, a bar is just some arbitrary segment of a larger bar. But leave that as it may. I want to answer your question, Judge Cleaver. Well, it seemed to me that the district court came to the conclusion that something that is using O's and 1's is not a barcode. Exactly. And that seemed to be what he was saying. That is exactly where the court got it wrong, Your Honor. He seemed to say that my support for that is from the language I just read to you. That's the only place where he finds that support, Your Honor. So that's why I thought this was a good place to start. I agree with you. It is a good place to start. And so this phrase, one, it is in the intrinsic record. But as we learned from Phillips, even if you do consider it to be intrinsic evidence, not all intrinsic evidence is created the same. And one must be very concerned, this is the AIA case, in terms of giving reliance as if this were the colloquy between the applicant and the patent office itself. Can you, just getting into the details, when it says therefore contains more than only two binary symbols such as 0 and 1, what does that mean? That means that the barcode, because of that width variable, has the ability to code beyond just a 0 or a 1. And why can't JARISH do that? Well, JARISH at column 9. So JARISH, JARISH, tomato, tomato. JARISH at column 9 talks specifically about what the code is. It talks about the code as being the small rectangles. And those are discrete portions that are segregated and separated. There is no need whatsoever to consider width. And so you have- The key aspect is that they're separated, so they won't have variable widths? Absolutely. And that exactly is the difference as reinforced at, for example, APPX1102, that barcodes are well-defined and clearly understood as having that line and gap of variable width. At 1.103, the sole decision-making criteria for something being a barcode versus a bitcode is a line and gap of variable width. 1.109, which says that a person of ordinary skill in the art at all times defines the barcode in this way, and any other interpretation is misguided. On the heels of those clear statements that say the barcode has to do with the bars and gaps of variable width, and only this one isolated reference saying a consequence of that is that it can contain more information than just a 0 or a 1. And mind you, at the bottom line, I think your position is that the APO file history, which is part of the file history here, shows that the maximum surrender, if any, that your opponent made to win in the APO was a user under JARG, which is strictly a bit 01010101 code. Well, certainly I think that's a consequence. I would frame it just marginally differently, Your Honor. And I think you really have to look at what exactly the applicant here, or the applicant's attorney here, specifically said to the EPO if you're going to conclude that there's a disclaimer at all. And frankly, I don't think I submit that this is insufficient to form the basis for a disclaimer. But secondly, you would actually have to look and see what the applicant said in terms of distinguishing YARISH. We didn't just distinguish YARISH as a whole. We distinguished the bit code in YARISH, namely a code which does not have variable bars and widths. And that's the distinction and what we actually said. What the district court here did incorrectly was first say, OK, Mr. Applicant, you caused a disclaimer by virtue of these statements in EPO, notwithstanding the fact that even Nespresso admits that our spec does not limit the term barcode in any way. There was no colloquy between the applicant and the patent office with respect to the scope of barcode. There is nothing in the Phillips-based intrinsic evidence here that would justify it. Where in the EPO submission do you most clearly say YARISH is different because there are no variable widths? I've got a reference for you in a moment, Your Honor. Why does nobody bring an appendix to the lecture? I've got it right here, Your Honor. You knew that we would spend the entire time on these pages. I did, and I've got it right here. Thank you. Well, I would point the court first to the sentences that I just pointed to, 1102, 1103, 1109. If you look specifically at- I think my colleague can find the specific reference that the presiding judge was asking for. You have a fact finding. Your Honor, if I may just answer Judge Taranto's question. Here at APPX 1114, underneath the image at the top of the page, 1114, yes, Your Honor. 1114, I don't have an image. Oh, there's an excerpt at the top of the page. I didn't answer, and I've seen that. So underneath there, it says, each of these cases then show that while the barcode is a bitcode, it is also a special case, and therefore represents a subset of the bitcode. It is readily apparent that not every bitcode is automatically a barcode. For example- Can I say, just to be clear, my question meant to be very specifically about a sentence that contains D1 for jarge in it. D1 is different because D1 is jarge, right? Next sentence, for example, the first sequence of 0's and 1's disclosed in document D1 is not a barcode, because the lines of other thicknesses, as are typical for the barcode, are absent. OK, that's all I have. Thank you, Your Honor. And then you have a fact finding, I believe, from the APO that's on page 1209, where they say that the D1, it's not evident that the surface is disclosed as a barcode having variable widths. Absolutely, Your Honor. You happen to know whether or not evident, which is translated from the German, what the German word would have been for evident? An unfort-  Unfortunately, Your Honor, I don't know what the underlying German word is. I mean, when they say it's not evident, I couldn't tell whether that was actually the board saying there's no evidence. Evident meaning it doesn't appear to be. Well, I think not- But maybe that's the same fact finding. I think it would be the same fact finding, whether it's not evident or no evidence. Either way, the EPO, upon analyzing- So basically, your bottom line position would be if there's a disclaimer, it's a disclaimer of codes that do not have variable width. Exactly right. And that's the end of the story. I think that's where the claim construction should have ended. And then the question was, should that case go to the jury or not go to the jury? Because then you look at the Nespresso-accused product, and you have to decide whether it has bars and variable widths. Precisely right. And our expert, I see him in my rebuttal time already, but I see that our expert worked through as best as he could, given the ambiguous claim construction that we received, and worked through the Virtuo capsule and found that there would be infringement, that there are bars and gaps of variable width throughout the Virtuo, the accused product code. And that, the district court just simply ignored, saying it was inconsistent with what we said to the EPO. We've been consistent all along, your honors. What relief are you seeking here? I'm sorry? What relief are you seeking here? One, a reversal and a remand. I think that I would prefer if this court, given the vagary that we've had with respect to this term, would direct to the district court in terms of what claim construction to apply with respect to the term. We'd submit that plain and ordinary meaning, or what the court said is plain and ordinary meaning in APPX 36, lines and gaps of variable width, ought to suffice here, and then a remand to get us to trial. So there has been now extensive litigation about what the plain and ordinary meaning is. Would it not be ludicrous for us to say, what you should give the jury is, give it its plain and ordinary meaning? If so, your honor, then I submit that the plain and ordinary meaning is exactly what I said, which is lines and gaps of variable width. I mean, the point here is, your honor, I actually grinned when I got this visitor badge this morning. This has a barcode on the bottom of it. We'd all agree it has a barcode on the bottom of it. But under the way that the district court is applying this, he's saying, you need to see whether this gets parsed into zeros or ones constituently. And if it does, then it's a bit code and not a barcode. That just makes no sense. And so, your honor, I agree with you. It would be great to have that direction to the district court. I'm deep into my time. I apologize. It can be summarized. Thanks. Thank you. Good morning. May it please the court. All the things that we disagree on in this case, we do agree on a couple of things that I want to start with. First is the plain and ordinary meaning of barcode, that it is a code with more, excuse me, a code with bars and spaces of varying width. And what that means, as my friend Mr. Carson just told the panel, is that by definition, because it has bars and spaces of variable width, it always has, a barcode always has, more than just two optical symbols. And since there were a couple of questions about this, I want to clarify that the optical symbols in a barcode are those bars and spaces of variable width. They are arranged in unique patterns. We agree on that as well. And for example, there is a figure on page 50 of the red brief that was relied on by KP and the EPO and in the district court by its expert. And that shows how these patterns, unique patterns of bars and spaces of variable width are arranged so that they map to specific integers or alphanumeric characters. Let me tell you part of what has confused me. So the page 51 is one indication. It's, I think, essentially the same as the Uniform Product Code, 10 pictures of the 10 decimal digits. And each one of those is seven modules wide with a variety of blank spaces and black spaces. I did not take it that the fact that there were different patterns between picture one, picture two, picture three, zero through nine was the point. Rather, the point is that within each little picture, let's call it a clause, that there are different length words. Some of the bars within picture four, decimal digit one, are fat and some are skinny. And that's what makes it a bar code, not how you put those things together into larger units, either than the module, call it a letter, or the groupings, call them a word, or a clause, call that the overall picture. And part of what is terribly confusing, which is, I think, a big problem for your side, that it is confusing, is that there is no comprehensible explanation within the Wolf submission or the accompanying Jesse submission of how to deal with all of that in terms of this zero one business. Because if you're doing it with modules, there will always be zeros and ones. Well, let me grab that bull by the horns, Judge Taranto. I think it's very clear from the EPO submissions and the intrinsic record that a bar code will always have more than two optical symbols. And what it's referring to there are those bars and spaces of variable width. The intrinsic record distinguishes a bit code, which does not use patterns to represent information, does not use bars and spaces of variable width to represent information. It uses equal size segments to which are allocated a symbol representing either a one or a zero. And in that intrinsic record, Judge Taranto, the applicant very specifically said that YARSH is not a bit code because it only ever uses ones and zeros. I'm sorry. You said it's not a bit code. I misspoke then. Thank you. It is not a bar code because it only ever uses two optical symbols. Are you looking at the statement on page A1111 for that proposition? I'm sorry. I didn't hear you. Are you looking at appendix page A1111 as you assert that? That is one area where it is. I mean, because what I see that as saying is I see it as saying that because the bar code is always constructed of bars having variable widths and therefore contains more than only two binary signals, right? Yes. But it's emphasizing what it looks like, always constructed of bars having variable widths, as opposed to YARSH having a code that doesn't have variable widths. Yes, that's exactly right, Judge Stolz. But I would take issue with one point, and that is that it is pointing to the appearance of the code, the physical manifestation of the code. We are talking about optical codes here. And I'm not saying that the appearance is irrelevant, but it's insufficient to define a type of optical code on the basis of what it looks like. These codes are not read by human eyes. What about where it says always constructed of bars having variable widths? Yes. Whether it's optical or visual. Yes. Well, let me answer that, Judge Stolz. Constructed of bars having variable width means those patterns that are seven modules wide that form a unique reference point. It's a waveform, I suppose, that is compared to whatever is in the circuitry of the scanner. But the point is this, that those bars of varying width are assembled in a specific way to make a unique pattern that maps to an integer. Where is that referred to? Like on page A1111 or in any of the discussion for that EPR? Yes, it is in the appendix. For example, at 1161, that is where their expert. How about 111? Well, at 1161, for example, their expert offered testimony that barcodes use more than two different optically recordable elements and or symbols. But it's also all over the blue brief that the way a barcode works is by assembling bars and spaces of variable width into a pattern. For example, at 8 in the blue brief. Shouldn't the district court read the language that we've been pointing to on 1111 to say that a code that is made up only of 0's and 1's is not a barcode? Yes, Your Honor. That's what he said. Yes, Your Honor, and that is true. And that is what the virtuo code is. It is a code that only ever has two symbols, a dark absorbent ink that represents the bit 0 and a light reflective ink that represents the bit 1. That is undisputed in this record. And that is what you're saying. You can have a code that visually has bars of different width, but it's not a barcode. Exactly, because the question is, do those areas that are Why is it not a barcode? Why is a code of variable width, clearly a variable width, no doubt about it, not a barcode? Because, Judge Clevenger, the issue is whether those Why are those something in the EPO record? Clearly and unmistakably state just that. Well, look, can I address the Where is that? Because that, you're saying, is the disclaimer. No, we're not saying there's a disclaimer here. I think disclaimer is an anomalous concept for this discussion. I realize that is where Can a barcode be written in binary terms with 0101? A barcode can be understood by a computer in those terms, Judge Clevenger, but everything can be on a computer, just resolves at some level of abstraction to just zeros and ones, whether it's Taylor Swift's latest song or a barcode or a movie or a spreadsheet. You're telling us basically that the definition of barcode for purposes of this case or maybe generally doesn't depend on the barcode being read by a computer. I'm sorry, doesn't depend on the function of the barcode, and that is to say to be read by a computer is irrelevant to the definition of what a barcode is. I'm sorry, I think that's what you're saying. If the question is, is it irrelevant how it is read, then no, I don't agree with that. It's not irrelevant. Unimportant, doesn't matter, you choose whatever you want. I wouldn't agree with that. The way that a code is read is very much a function of what type of code it is. A barcode is read by looking at those patterns and deciding what those patterns map to. So I don't know actually how the readers work, but let's just assume the readers look at every module, and they say, reflection, no reflection, 0, 1, 0. Now, in the uniform product code, they group every group of seven, one of those module readings. Each one of them is a 0, 1, a 0, 1, a 0, 1. And by looking at that seven grouping, they figure out if it's a decimal one, or a decimal seven, or a decimal nine. Why is that, which if anything is a barcode, that's a barcode, not excluded by your interpretation of this 0, 1 analysis? Judge Toronto, that was the contention that was made by Kathy in the briefs in this case. There is no support anywhere in the record that the way a barcode works is that the modules are read as bits, and then translated into alphanumeric characters. It's an optical code. And that optical code, and that image, is recognized as mapping to an alphanumeric character. A big code is certainly read that way, where the individual coding segment, the identical size and geometry, has either a dark absorbent ink or a light reflective ink. And it is interpreted individually as either a 0 or a 1. But there is no evidence in this record, and my friend Mr. Carson will not stand up and point to any, to suggest that the way a barcode is read is on a module by module basis. We all agree that what defines that barcode is that it is constructed from bars and spaces of variable width. That is Kathy's position as well in the blue brief. It is not anyone's position, other than Dr. Singho's. Suppose that I thought that the word or the phrase constructed from is so unclear, I just don't know what it means. May I respond to that, Judge Charnow? I believe that what it means is, if you are a barcoder and you have your toolkit, you reach into it and you have six, seven, eight different tools in there. You have, constituting these symbols, a variable width, bars and spaces. If you're a bitcoder, you only have two in your toolkit. It's just a dark reflective ink, and it's a light, excuse me, a dark absorbent ink, a light reflective ink. One represents a 0, the other represents a 1, and never the twain shall meet. That was the basis on which all of the submissions in the EPO, in the district court, and even in this court, that Caffey said, this is what distinguishes the Yarish reference. Our inventor, who is the lead author on the publication at issue and who wrote the code, the virtual code that's accused here, that was the basis on which they distinguished the Yarish reference, that it only ever has 0's and 1's. It doesn't have these patterns formed by bars and spaces or variable width. And the anomaly at the heart of this argument is that if they are right, and if all we have to do is abstract a barcode down to individual bits of 0's and 1's and do the same with bitcodes, then there's no difference between barcodes and bitcodes. And that contradicts every position that Caffey has ever taken and every brief that has been submitted in this case, where it's been clear that there is a clear distinction between a barcode and a bitcode. And so I would submit that, to finish my earlier answer to Judge Clevenger's question, that the that the And your argument is that you're accusing Yarish as a bitcode. Well, it's not just that. It is that the It's a bitcode even though it visually has bars of a different width. Well, I would put it a little differently, Judge Clevenger. Can I ask you a question? It's a bitcode because of the optical way in which it's read. A bitcode is an optical way. Yours is a bitcode because of the optical way in which it is read. That's correct. It only has two symbols, 0's and 1's. Red is only two 0's, 0's and 1's. But it could be optically read differently because there aren't spaces and because there aren't variable bars, right? There's variable width bars in your code, right? No, I don't agree with that, Judge Stahl. I'm sorry. There are only, this is undisputed. The circumference of the capsule is divided into 140 equal sized segments, undisputed. Each one of those segments is assigned a either a 0 value bit or a 1 value bit, undisputed. When that code is read, it is read sequentially, and each individual bit is extracted from those segments of identical size. That's how YARSH works. That's how the virtual code works. Do I misunderstand that YARSH has spaces between its bars? That YARSH has what between the bars? Bases between the bars. No, this was a mistake that was made by CAFE and by its expert. They misread the YARSH reference very badly. They contend that the intermediate surfaces, I believe that's what you're referring to, Judge Stahl, that the intermediate surfaces, there are intermediate surfaces between rectangles, and that the rectangles are the coding elements, 1's and 0's, and that the intermediate surfaces are this neutral zone that has no coding information. That is what Dr. Singho said. That is what is said over and over again in the blue brief, and it's wrong. And all one needs to do, inarguably wrong, because all one needs to do is look at the YARSH reference, and it specifically and clearly states that the intermediate surface, I'm sorry? Page. Yes, thank you. It is the appendix at 2978, lines 8 through 15. 2978, 8 through 15. You can see at line 1, excuse me, around line. Circular pattern, that's what it starts to say. Yes. There's a reference on line 8 to the intermediate surfaces having flat mirroring and or diffusing properties. And then if you skip down to line 15, it says exactly what that is. The flat mirroring or flat reflective diffusing surfaces are assigned bit 1. OK? That is directly contrary to the Singho's declaration and to the statements all over the blue brief at 24, 53, 56, 60. And it's the cornerstone, Your Honors, and I'm sorry, I'm over my time. But I'll finish now. All right. But it's the finish your two sentences. Thank you, Judge Taranto. It is the cornerstone of Caffey's argument that the Yorish reference and the accused virtual codes are different. It's that mistaken reading, that inarguably wrong reading of the Yorish reference. Thank you. Thank you very much for your time. Thank you. Thank you for the court's generosity in giving me three minutes. Since we're in Yorish, I'd like to call the court's attention to the following page, 2979, which is page 9 of the Yorish reference. And at about line 7, there's a couple of sentences that say, on figure 5, the light beam 74 from the light source L touches the mirror surface of the code, parentheses, small rectangle 81. The Yorish here tells us that the code is the small rectangle. And it goes on, and is reflected into a reflective beam 76 to the sensor S with high intensity. A bit such as 0 or 1, both in quotes, is thereby provided to the control unit. That's a bit code. It's not relying at all or containing any variable with whatsoever. And that's absolutely consistent with what we've said to the EPO, what we've said to the district court, what we've said to this court. There is no incorrect statement there. Has the litigation in this case in district court proceeded to the stage at which invalidity contentions were submitted? I believe invalidity contentions were submitted, Your Honor. Dependent on the claim construction or proceeding? Yes, they are dependent on the claim construction, obviously, here. And we'd ask, well, candidly, I think the definition that we proffered as the correct one for plain ordinary meaning essentially dispatches of a dispute over whether it's a barcode or not. But nevertheless, we would ask that the court remand for further proceedings. To just address the question of whether or not. I just want to be sure you understood my question, right? Because something you just said at the end suggests maybe didn't. I asked about invalidity. Yes, invalidity. Yes. Yes, Your Honor. Because if you get a very broad construction, sometimes broad constructions create invalidity problems. I understand that, Your Honor. But remember, the claim at issue that was the subject of the novelty proceeding in the EP was a vastly different claim than what we're looking at here. These are method claims and system claims, whereas the claim at issue in the EP proceeding was simply the packet capsule. So the single service coffee beverage, right? So there are additional limitations and additional things that would be considered. In addition to that, I just want to dispatch of one thing. I thought I heard my learned friend, Mr. Barsky, say that there are no bars of variable width. I'm holding up APPX 3358, which is an image of the Virtuo capsule. Correct. Everything for him depends on how it's read. Exactly. And all that's downstream. That's how it's processed. And again, we get right back to what I talked about in terms of the visitor badge. If this gets read as independent zeros or ones, then this thing, which we all agree is a barcode, ain't a barcode. And that just can't be correct. Is he right that there's no evidence in this record of how, for example, the uniform product code is read? Is it read module by module? Continue that for five more words, module. Unfortunately, Your Honor, I can't answer your question. I don't know exactly how it's read. And in fact, there is a companion case that's continuing. And we expect that we will be able to, I'm sorry. And we expect to get the source code to see exactly what that post-processing is. But Your Honor, if you're shopping at Target and the lights go out, everything still has a barcode, even if it's not read. Thank you. You've exhausted your time. I am over time. I apologize. I appreciate the argument. Thank you, Your Honor. Thank you very much. I want to recognize the state collegial and the chairman of the trial court. I appreciate your demeanor. Thank you, Your Honor. We appreciate your time. You've exhausted the case.